We'll hear next from the parties in Baez v. Pinker. Good morning. My name is Nora Georgescu and I'm representing Plaintiff Appellant Candido Baez. May it please the Court. I'm going to ask you to pull the microphone a little closer. Thank you. When Mr. Baez's father passed away, Mr. Baez wanted to pay his respects and mourn alongside his family. Yet defendants forced him to appear at his father's funeral in disheveled prison garb, unnecessarily making a mockery of the solemnity of the funeral and thereby adding to Mr. Baez's suffering during what was already a time of great hardship. Could I try to clarify what is the liberty interest that you're claiming here? It seems to me that at different times you are referencing a right to appear in civilian clothes, a right to appear in his own clothes, a right to appear in unwrinkled and well-fitting clothes, and a right not to be in handcuffs or shackles. Which, if any of those, or am I totally, is there some other formulation that you would prefer as to what is the liberty interest that you claim is created by these regulations? Yes, Your Honor. There are three regulations that address inmate attire and each creates a distinct liberty interest. So the first regulation, there's two regulations that are read in conjunction. Directive 4901 and Directive 3081. Directive 4901 says that inmates shall appear at funerals in state-issued release clothing, and that state-issued release clothing is then further described in Directive 3081, and that state-issued release clothing is to be properly boxed and packaged to prevent wrinkling. Are these regulations or are these internal policy directives of the agency? They're not in the New York Code of Regulations. No. Title 7, Section 5220 is from the New York Code of Regulations, and that's the liberty interest, that's what creates the liberty interest to wear personal civilian clothing. Personal civilian clothing? Versus khaki trousers. And that's what he appeared in? That is what he appeared in. So what is the complaint, that they were wrinkled? They were wrinkled. And that's a constitutional right? Your Honor, the pain and the humiliation that was caused by having, that Mr. Baez experienced when he appeared at his father's funeral after seeing his father. But what I want to, you just said personal civilian. Where does personal civilian appear? It's against civilian. Yes, Your Honor. Title 7, Section 5220 only says civilian clothing. Yes. However. And in other places, there are references to personal. So now, you know, I may think these are very silly regulations, but where is it that it has to be his own clothes rather than civilian clothes? And where is it that it says that the clothes that are given should be properly, I mean, really nice? And, you know, if we get down that line, what is wrinkled, what is not, that becomes a little bit difficult. But my main thing is where does it say that it has to be personal clothes rather than just civilian clothes? Yes. So there's two parts to that answer. First, Section 75220 talks about civilian clothes both in the discharge context and the funeral context. Now, civilian clothes. You conceded that the discharge context is not applicable here. We're not talking about discharge here. However, civilian clothes must mean. In your reply brief at page 7, you're acknowledging that those are not regulations that apply here. That's a different. So let's stay with the ones that you're saying apply here. I am, Your Honor. So Title 7, that states that particular provision, the one that we do say apply, says that civilian clothes, in the same paragraph says that civilian clothes shall be worn to funerals and shall be worn when the inmate is being. Exception. One moment, Your Honor. Okay, civilian clothes. I'm not seeing that. So page 8 of our reply brief states, when granted permission to visit a sick relative or to attend a funeral of a member of his immediate family, the inmate shall appear in civilian clothes. And then, as if you read on, it says that. State release clothing. That's civilian clothing. It's khaki trousers and a white shirt. No, Your Honor. Our position is that that is personal civilian clothing. But where do you get that it is personal? That's what I keep coming back to. The only time it says personal civilian, that is if it requires, is permitted with respect to people in county jails. And this is not a county jail, and I'm not sure if permitted means required. But that's there. Both personal and civilian are there. But in all the things that you're telling us, it is civilian. Now, you know, I may think that it would make sense to say that these ought to be his personal clothes if he has it, but I don't see a regulation that requires that. Okay, yes, Your Honor. If you don't see that in this particular provision, which we do argue that because civilian clothes is not defined and because it must mean then the same thing in relation to the funeral and the discharge context, it's then logical to assume and to read this regulation as stating that an inmate being discharged is wearing personal civilian clothes. But that aside, actually Directive 3081 distinguishes between civilian clothes and state-released clothing, which also bolsters the argument that civilian clothes must be personal civilian clothes. But you're making an awful lot of this ought to suggest that, or it is logical to suggest that, or it is something else to suggest that. But at the very least, at the very least, wouldn't somebody who read them as civilian means civilian and not personal have qualified immunity? I mean, you know, aside from whether this rises the distinction between personal and civilian when it isn't clearly stated rises to a liberty interest, this is a very subtle argument that somehow people ought to say that civilian meant personal civilian when in some context it does and in another context it doesn't. Yes, Your Honor, that's true. And that's exactly why even if reading all this to mean that, in fact, it should be state-issued released clothing, nonetheless the defendants violated that because Directive 3081 makes it very clear that state-issued released clothing is to be freshly packaged and to prevent wrinkling and properly fitted. And 581? 3081, Your Honor. Mr. Jeskew, we've gotten into a much more complicated question than I intended to ask because you've been telling us appropriately why you think certain liberty interests were created. I'm still trying to get at what the liberty interest is that you say was created. I think I now understand that you have, A, not abandoned the argument that there is a liberty interest in personally owned clothing. That's right? Correct. And then you have a, I guess, fallback position that even if we disagree with that, there is a liberty interest in unwrinkled, jail-issued. Properly fitted. Properly fitted. And the third part I wanted to get at was, are you making an argument that there is a liberty interest in not appearing in handcuffs or shackles? No, Your Honor, we are not. You're not arguing that at all? No. Okay, thank you. You're taking back your shackles argument. You're not presuming. If you ever made it. I see the complaint, yes, but not in, yes. And I see my time, yes. The problem, see, my problem is that if there were a regulation about shackles that was not discretionary, I could see that as possibly rising to a liberty interest because appearing at a funeral in shackles is something pretty horrible. But as you say, that is specifically discretionary. So that that which really makes a big difference, you can't be arguing. And so you're arguing something else, which is a little, you know, I must say, harder to take as to whether when somebody appears at a funeral in clothes which are not his but are government-issued but are of the same type and happen to be wrinkled, that this goes to the fundamentals of due process. That's a little harder. Your Honor, I do see your point, if I may briefly respond, and then I see that my time is out. I will say that while shackles, yes, are more shocking to appear at a funeral that way, nonetheless, this is about Mr. Baez's dignity and humanity here, and having to appear at his father's funeral with his family members in this disheveled, wrinkled, ill-fitting clothing, stumbling and making a scene is really what's at issue here. And that was really what he was undignified and unpresentable, and that caused him humility and humiliation, I'm sorry, and suffering. Do you seriously think that his dignity would have been less upset if he appeared in clothes which were not wrinkled, which were identical to the clothes he had, but he owned them, but he had shackles? Your Honor, I think, regardless, this is a very difficult position for him. He is a prisoner. Do you mean seriously, appearing at your father's funeral in shackles? It's horrible. It is, absolutely. What does it add to that, that the clothes are wrinkled? Your Honor, I can't speak to how he felt. I'm being very realistic about that. Yes, I think there is something. Again, Mr. Baez can't hide that he's a prisoner. Everybody knows that he's been convicted of a crime and he's here on release to attend the funeral, but that doesn't mean that he shouldn't have just the ability, the minimal ability. What's he incarcerated for? I don't think the record's clear. What's his crime of conviction? I believe murder and assault. Which helps explain the shackles. Yes, although I will say, Your Honor, he had an exemplary disciplinary record. He was not an escape risk. But you are not making a claim of procedural due process because he didn't get a hearing with respect to the shackles. That is, you could have made a claim, perhaps, that while shackles may be given, that there ought to be some kind of hearing as to whether shackles are appropriate or not. But that's not a claim that you've made. No. So that just isn't before us. All right, thank you. We'll hear from the government. Thank you. May it please the Court, Seth Rakosky for the defendants. Baez's due process claim in this case fails for three independent reasons. First, he hasn't alleged a valid, legally enforceable liberty interest in attending his father's funeral in his own civilian clothes or in any other sort of liberty interest that's been claimed in this case at various stages throughout this appeal and the briefing. But even if he had such a liberty interest, even if that existed, its denial didn't, you know, result in a substantive due process violation. And also, thirdly, Baez has failed to sufficiently allege personal involvement by any of the defendants. Now, I'd like to start with the liberty interest in this case. Let me ask you to add another one, or do you waive qualified immunity? No, Your Honor. We don't waive qualified immunity. We understand that that was not raised below. We acknowledge that. However, you know, we would assert, however, that the issue of qualified immunity is so clear on the face of this complaint, notably missing from any of the Do you have to raise qualified immunity when the district court rules for you on a broader ground, which may be incorrect, but rules for you in a broader ground? Is that the only time you can raise qualified immunity or an appeal when that broader ground is being challenged? Do you have a right to raise qualified immunity? I'm not sure. I understand the question, Your Honor. You won below because the district court said since they could have kept him from going to the funeral, they could send him to the funeral in any which way they wanted. I frankly find that argument absurd. But anyway, that's what was won below. Given that you won on that, did you have to make a claim of qualified immunity then? Or when that ground is being challenged, can you then raise qualified immunity as to why they didn't get what they won, why they were not given a different kind of clause? Well, Your Honor, as I understand it, our failure to raise qualified immunity occurred before we won below. The issue of whether or not we would prevail on the issue on the ground that was raised in the district court below was far from clear before the district court issued its ruling. The failure to raise qualified immunity — Doesn't forfeit it. No. It doesn't forfeit it. And all we're saying, Your Honor, is that we win for multiple reasons here. But if the Court were inclined to rule against us on each of those number of issues, the lack of a liberty interest, the lack of a denial of substantive due process, if the Court were to rule that there was a defendant who was sufficiently involved, even if the Court were inclined to rule for Mr. Baez on all of those grounds, we still believe the Court should hold that the defendants are entitled to qualified immunity in this case, because it's clear from — just from the face of the complaint and the lack of any case law cited in the briefs on what an inmate is constitutionally allowed to wear when attending a funeral. There's just simply no cases on this point. So it can't be clearly established in 2011 that Mr. Baez had a liberty interest that was denied without substantive due process here. Now, if the Court were to remand and to go back and we were to litigate this case after discovery, the case very well could just end up back in this Court years from now, and we would just submit that that would serve no interests here when the issue of qualified immunity is so clear. So that's all we're saying on the qualified immunity point. Now, I'd like to return back to the liberty interest point, Your Honors. In order to create a liberty interest, the State must use mandatory language in some statute, regulation, or policy that places substantive limitations on its officials' discretion, and the State simply didn't do so here. You can start with the statute. The relevant statute in this case is Correction Law Section 113.  That statute doesn't have mandatory language. It says nothing about personal clothing. It says nothing about restraints. It says nothing about wrinkles or anything like that. Likewise, the relevant regulation in this case, 7 NYCRR Section 5220, that regulation says that if an inmate is to attend a funeral, then he shall appear in civilian clothes. But that's a style of clothing that the regulation specifically contrasts with, I think the words are, the prescribed uniform of the institution. These are the ordinary green clothes that an inmate wears when he's in ordinary prison garb. This is green pants, green shirt, a green jacket, weather permitting, and boots, things like that. That doesn't say anything, again, about his own personal civilian clothing. So in that case, we're left to the policies. Now, the relevant policy in this case is Directive 4901. That policy says that, generally speaking, an inmate who is traveling outside of an institution has to wear his ordinary, green, prison-prescribed uniform of his institution. Again, green pants, green shirt, green jacket. Sotomayor. I have to deal with that because that's not what he wore. I mean, they let him go in the khakis and the white shirt. He didn't go anywhere in prison garb. The question is whether he went in such ill-fitting and wrinkled garb that it's got, you know, it shocks the conscience and is a substantive constitutional violation. Well, that's right, Judge Radji. So if the claimed interest is not just his own civilian clothing, but if it's something more specific, if it's his own civilian clothing that resulted in non-wrinkled, you know, that wasn't wrinkled, properly ironed, properly fitting, if it's that sort of a liberty interest, then, again, the directives speak about that. Directive 3081 actually distinguishes between two types of civilian clothing. It actually says in the relevant section of Directive 3081, it says the following are types of civilian clothing or something like that. It draws a distinction between two types of civilian clothing. One is the State-issue release clothing that inmates wear on a funeral. Another is the type of civilian clothing that they wear when they're discharged or paroled or participating in a temporary release program. In those cases, the clear language of the statute gives inmates the opportunity to wear their own personal clothing. But that's not funerals. But that's not funerals. And Directive 4901, which talks about funerals, incorporates only State-issue release clothing, which is a term of art that it specifically cross-references in Directive 3081. Sotomayor, opposing counsel says that that directive which defines civilian clothes defines it in a way that it must be, it says they can't be wrinkled. Now, do you, does it define it that way? It does not, Your Honor, because there's a section, the subsection that it references in Directive 3081, I have it here. I can leaf through it if I need to, but I believe it's Part C of that section. That one refers to court appearances, and that's where it says that the clothing must be properly fitted. Subsection B, which is temporary release, talks about how the clothing must be carefully boxed to prevent wrinkling, and then once it's carefully boxed, it has to be kept under lock and key. That's temporary release programs. Again, that's not funerals. Do those regulations about how the clothing should be boxed and maintained create any rights at all in individual prisoners? It sounds to me like that's just saying keep it under lock and key. That's not a right of the prisoner. That's to protect it from prisoners getting access to it when they're not entitled to it. Well, no, that's right. Isn't this whole thing just, that part of the regulation is directives to prison authorities about how to conduct their business. Is that the same thing as something that creates a liberty interest in an individual? No, Your Honor, and I agree with you, and that gets me to a separate part of our presentation today, which is that even this whole parsing the specific language of these regulations and the minutia of funeral attire, this is precisely what the Supreme Court in the Sanding case was getting at when they said that a mandatory language in some statute, regulation or policy is simply not enough to create a due process right at all. This Court, the language of the regulation is not the only relevant question here because the Court must also look to the nature of the deprivation and must conclude that even if the State officials were to have violated some sort of mandatory language in a State policy, that it resulted in an atypical and significant hardship on a prisoner. And in this case, attending a funeral that a prisoner doesn't have a right to attend in the first place in khaki pants that are provided by prison officials so that he can attend in and, you know, and fit the sort of the nature of the occasion, that is simply just not a significant enough hardship to warrant constitutional protection in this Court. It would lead to all the sorts of negative consequences that the Supreme Court was getting at in Sanding when they said that parsing all of these regulations would create a disincentive for prison officials to codify all of their instructions that they want to, you know, to write down to provide directions to prison officials. It would also lead this Court to sort of be doing exactly what we're doing here today, monitoring the day-to-day administration of prison life where State prisons are supposed to be given a great deal of latitude in how they will be writing and instructing the rules by which their prison officials would be governing their inmates' life. This is just not the type of case that the Supreme Court in Sanding was talking about should be scrutinized as, you know, giving inmates a liberty interest, even if there were mandatory language. And so for that independent reason, Your Honors, even if you were to look at the clear language here, which we do not believe creates a mandatory obligation, but even if you were to find one, we don't believe that it would rise to the level of a liberty interest here. Sotomayor, you think that it – let me just push what you're going in and say. Suppose, contrary to fact, there were a right to appear at a funeral, not shackled, when you were guilty of a certain offense and that this prisoner were guilty of that offense, would you concede that there might be a due process right if somebody were made to go to a funeral in shackles? What I'm asking is, is it possible that if there were a liberty interest in some circumstances, that liberty interest would become strong enough to be a due process one? But the context of that is very different from the one of this case. Your Honor, this question is highly contextual, yes. I mean, every case is different. And this whole case arises under the question of whether or not the State has created a liberty interest. There's a separate body of due process law where liberty interest can arise under the due process clause itself, but that's simply not this type of case here. So in certain cases, especially arising, you know, relating to the funeral context, it's possible that an inmate may have a liberty interest relating to a funeral, but that's just simply not the case here. Thank you. Thank you. Mr. Jasko. I'd like to briefly address the point about Sandin versus Conner that Mr. Rokoski just made. The interests that were referenced in Sandin versus Conner were about receiving sack lunches instead of tray lunches, about not receiving a paperback dictionary, about not being placed on a food loaf diet. Those cases clearly deal with nothing more than inmate preferences regarding day-to-day comforts. And this case is about much more than that. It's about Mr. Baez's dignity and humanity, and those were at stake, and that's what the defendants oppressed by requiring him to wear these clothes to his father's funeral. So Mr. Rokoski's point about Sandin versus Conner is really not relevant here. And I'd also like to address briefly his qualified immunity point. To your question, Your Honor, the qualified immunity was waived because it wasn't raised below. And actually, Provost versus City of Newburgh dismissed the case for this very reason. I'm sorry, dismissed the qualified immunity argument because it wasn't raised below. And even if this court found that qualified immunity was not waived, the defendants are not entitled to qualified immunity. The absence of legal precedent that they cite is not enough to establish that this was not clearly established law. And, in fact, Johnson versus Newburgh in large school district said this, and the law is clearly established here because Directive 3081 is sufficiently definite as to establish the bounds of the law. And so for that reason, even if qualified immunity was not waived, it is not applicable here. Counsel suggested that the argument you make about the condition of the clothes, the boxed, so that they don't get wrinkled, does not pertain to funeral attendance. Do you want to respond to that? Yes, Your Honor. Looking directly to Section B of the regulation, which is, I believe, on page 5 of the addendum, it does mention that this is available for furloughs and release activities. However, Directive 4091 — Sorry, I'm not with you. Page 5 of the — I'm sorry. I was looking at your appendix. Okay. Thank you. Yes. So that is the clothing for temporary release. And that temporary release clothing is specifically referenced in Section 4091, which has to do with funerals. Where is that clearly established in the law, that that's what that means,  I'm sorry. I don't understand your question, Your Honor. You've just argued against qualified immunity, saying that this is clearly established. And what has said that that section, and you're saying it's Section C on page 5? Section B and D. B, as in boy, and D. State-issue release clothing, that part? Yes. So the state-issue release clothing is what's referenced in Section 4091. This is for release, when the prisoner is released from jail. Your Honor, 4091 uses the phrase state-issue release clothing for funerals, and specifically says that the state-issue release clothing, as listed in Directive 3081. So 4091 requires us to read the definition of state-issue release clothing. And that is to be — and it says clearly, it is to be carefully boxed or packaged to prevent wrinkling. Where? I'm looking at D, and it says state-issue release clothing and defines the three things it's to include. And what am I missing? Section B, Your Honor. That's temporary release, right? That's for people who are being transferred to temporary release facilities. The fact that — yes, but it still has — That's not funerals. No, Your Honor. But the fact that it has to be — there's no reason to think that the fact that it has to be carefully boxed — I agree that it makes no sense that you could be, you know, neatly pressed for this, but not neatly pressed for funerals. But when you're arguing you've got liberty interest, there has to be mandatory language. And so the fact that there's mandatory language for temporary release and court appearances doesn't say there's mandatory language for funerals. I agree with you it makes sense for it to be that way, but that's not what the question is. And that could be a problem for you in terms of arguing that there's a constitutional right here. And a clearly established one at that. Okay. Thank you very much. Thank you. Mr. Jeske, before you go, may I say I appreciate that this isn't your complaint, that is the complaint was filed pro se, that you were appointed by this court to argue this very argument, and we understand that. And we appreciate your and the firm's willingness to take on that assignment. We do indeed. Thank you. We do indeed. Thank you very much.